## MARIANNE MOTTE *vs.* FRANCIS ALGER & another.

The *St.* of 1845, *c.* 208, §§ 3, 6, does not forbid the conveyance of real estate by a husband to his wife through the intervention of a third party.

A., the owner of a house and land, permitted M., his son in law, to occupy them, and while M. was in possession executed a deed to him of the premises, which was not recorded, and the delivery of which was in dispute. *Held*, that if the deed was not delivered, yet declarations and acts of A. and M., tending to show that they both believed the premises had been effectually conveyed to M., and that they both treated them as belonging to him, were competent evidence from which a jury might infer a disseisin of A. by M.; although since the execution of the deed A. paid taxes and obtained insurance in his own name on the premises, and with the consent of M. and his wife conveyed a strip of the land to the city for the improvement of the sidewalk.

WRIT OF ENTRY to recover a house and land in Boston. At the trial before *Merrick*, J., after the evidence was all in, the tenants requested the judge to direct a verdict in their favor and upon his refusal consented to a verdict for the demandant, subject to the opinion of the full court on the evidence to be reported; and the parties agreed that if upon the whole evidence and proper inferences to be deduced from it, and under proper instructions, a jury would be warranted in finding a verdict for the demandant, then judgment should be entered on the verdict, otherwise the verdict should be set aside and a new trial granted. The facts are stated in the opinion.

*H. F. Durant & R. Choate*, for the demandant.

*B. R. Curtis & J. G. King*, for the tenants.

MERRICK, J.   The demanded premises formerly constituted a part of the estate of Cyrus Alger, now deceased; and it is admitted by the demandant that the tenants are entitled to hold the estate as trustees under his will, unless she can show a superior title thereto in herself.   She claims to hold it under a conveyance made to her to her sole and separate use by Stephen H. Frothingham, to whom it had previously been conveyed by her husband, Mellish I. Motte.

The tenants deny that Mr. Motte ever owned the estate. They also contend that, even if he ever was the owner of it, the demandant has failed to show such a title in herself as will enable her to maintain this action.

It is conceded by her that no consideration was paid upon the execution of the deed from Mr. Motte to Frothingham, or of that of the latter to her, but that both of them were made for the sole purpose of conveying the estate of Mr. Motte to his wife. Upon this ground the tenants contend that she did not acquire and cannot establish any legal title to it, because those proceedings were an attempted illegal evasion of the statute, which, in conferring power and right upon all persons, capable in law of making a deed, to convey real estate to a married woman, to be held by her, without the intervention of a trustee, to her sole and separate use, further expressly provides that nothing contained in it shall be construed to empower a husband to convey any part of his estate to his wife. *St.* 1845, *c* 208, §§ 3, 6. And it is argued for the tenants that as Mr. Motte could not legally and effectually convey the premises to the demandant, he could not do it indirectly; and that therefore the deeds from him to Frothingham, and from the latter to her, having been made avowedly and solely for that purpose, must necessarily be inoperative and void. But this position is a conclusion that cannot justly be deduced from the provisions of the statute. By the common law a husband cannot convey property to his wife, but he is not restrained by it from conveying his estate and making a perfect title to it by his deed to any other person, by whatever motive he may be actuated, or for whatever object or purpose it is done, provided that creditors are not thereby hindered or delayed in the collection and payment of their debts, and the purpose to be accomplished is not in itself illegal. And he who has thus become an absolute owner is invested with an unrestricted power of disposition, and may therefore convey his estate, either to the wife of the grantor or to any one else, at his own pleasure. The sixth section of the statute was obviously inserted in it merely to declare the intention of the legislature, not thereby to change this rule of the common law; a change which otherwise might be legitimately inferred, and would perhaps be an unavoidable inference, from the unqualified language which, in another part of it, gives to all persons capable in law of making a deed the right to con-

vey property to a married woman, to be held to her own sole and separate use, free from the interference or control of her husband. And therefore, as the common law was left without alteration by this statute, in reference to the power and right of an owner of real estate to transfer and convey it to a third per son at his own will, it is manifest that the deed of Mr. Motte to Frothingham was a valid and effectual conveyance, and that by the deed of the latter to Mrs. Motte she acquired all the right, title and interest in the premises which was conveyed by Mr. Motte to him. The estate thus became absolutely hers; and she is entitled, under the provisions of another section of the statute, to all the remedies in respect to it which she could have if she were unmarried.

In reference to the estate of Mr. Motte, the demandant contends that he acquired a perfect and indefeasible title to the demanded premises, either by a deed from Cyrus Alger, or by an adverse and exclusive possession uninterruptedly continued for more than twenty years. The deed from Alger was produced by her upon the trial. It appears upon its face to have been, and it is not denied that it was, executed by him in due form of law. But the parties are at issue upon the question whether it was ever delivered to Mr. Motte by Alger. Much evidence in relation to it has been submitted to the consideration of the court. But it has not been found necessary to decide that question, or to express any opinion upon the effect which ought to be given to it, because if there never was any actual delivery of the deed, the title of Mr. Motte appears upon another ground to be very fully established.

It is an established and well known principle of law, not contested by the counsel for the tenants, that title to real estate may be acquired by disseisin, if the disseisin be afterwards maintained and continued, openly and notoriously, by adverse, uninterrupted and exclusive possession during a period of twenty successive years. In the case of *Parker* v. *Proprietors of Locks & Canals*, 3 Met. 99, it is said by the court, that if a person enters upon the land of another, having no right or title thereto, and maintains exclusive possession thereof, taking the rents

and profits to himself, this must be considered to be adverse to the owner, and if it be of sufficient notoriety it amounts to disseisin. It can certainly be none the less so if the entry is made and the possession afterwards maintained under color and claim of title. But mere possession is not sufficient to constitute a disseisin, or, however long continued, to affect the title of one to whom the estate belongs. To have any such effect, the possession must be adverse and under a claim or right, and so open and notorious that both the claim of right and the occupation and possession are or must necessarily be presumed to be known to him against whose right the entry is made. And as no one is to be supposed, without evidence, to have taken an unjust advantage of another, or to have intended to do an unlawful act, if the entry and possession were originally permissive, the law will presume that all subsequent possession will be of the same character, until the contrary is shown by proof of some act or course of conduct changing the relation between the parties, and constituting an actual disseisin. It is therefore a reasonable as well as an established rule that, whenever a party asserts or relies upon a title thus acquired, the burden of proof is upon him to substantiate every fact essential to maintain it. *Brown* v. *King*, 5 Met. 173. *Parker* v. *Proprietors of Locks & Canals*, 3 Met. 99. *Hall* v. *Stevens*, 9 Met. 418. *Sumner* v. *Stevens*, 6 Met. 337.

It remains to be considered whether, in observance of these rules and principles of law, a jury would have been warranted upon the evidence produced upon the trial, assuming that it was insufficient to prove a delivery of the deed of Alger, in finding a verdict for the demandant upon the ground that Mr. Motte acquired a title to the demanded premises by disseisin and by open, adverse and exclusive possession continued uninterruptedly for a period of twenty years. It appears that he entered into and took possession of the estate in the year 1830; and that he continued thereafterwards to occupy it, by himself, or by tenants who paid him rent, until the death of Alger, which occurred as late as 1855. It is conceded that his original entry and subsequent possession until the 13th of August

　　　　SUFFOLK.

1833 were permissive. The demandant contends that at that time he disseised Alger, and always afterwards openly occupied and possessed the estate under a claim of title adversely to him and with his knowledge. As more than twenty years elapsed after this time before the death of Alger, during all of which it is admitted that Mr. Motte was in the actual possession, the single inquiry which remains must be whether this possession constituted a disseisin, and was held adversely to Alger with his knowledge.

On the 13th of August 1833 Alger made, executed and acknowledged a deed of the demanded premises in due form of law to Mr. Motte, and on the same day said to him, " I have been to your friend Mr. Loring to give you your house," or " to make it yours." Mr. Motte distinctly understood his meaning, and thanked him for the gift which he had made. Now although it is assumed that the deed thus made is ineffectual, because it was never delivered by the grantor to the grantee, yet we think that the evidence abundantly shows that each of the parties supposed and believed that the estate was in fact on that day effectually given, transferred and conveyed to Mr. Motte; and both of them always afterwards acted upon the supposition as an undisputed fact. Mr. Motte held and managed the estate as his own; occupied it himself with his family, or leased it to tenants and collected the rents to his own use; made and paid for repairs upon it, and in all respects treated it as property which rightfully belonged to him. On the other hand, Alger evidently intended that his deed should be a valid and effectual conveyance of the estate, and during his whole life believed and asserted that it was. He said this repeatedly; assuring the demandant on more than one occasion that everything had been done which was necessary to make it hers or her husband's, and that no one could get her house from her; and he disclaimed all right to or ownership of it. From all these circumstances, the one party having the open and exclusive possession under a distinct claim of right and title, and the other not only knowing of and acquiescing in, but actually affirming the validity of the claim, the proper conclusion to be deduced cannot be mistaken.

The possession by Mr. Motte, subsequent to the execution of the deed and notice from Alger that the estate had been made his, was certainly no longer permissive; since it is plain that a person who sets up no claim of ownership, but who on the contrary believes and acts upon the belief that he has transferred by a valid instrument of conveyance all his right and title in an estate to a party in possession, is not and cannot possibly suppose himself to be in any condition to give or withhold his consent to its further continuance. And, on the other hand, he who is induced to believe and does believe that he has been invested by the former proprietor with a perfectly good title must necessarily afterwards occupy it adversely to his supposed grantor. This was the actual relation of the parties to each other; and upon the principles of law above stated the possession of Mr. Motte constituted a disseisin of Alger. The latter might, if he had discovered his mistake, and that his deed did not, because not duly delivered, transfer and convey any property or title to the grantee named in it, at any time within twenty years after the disseisin, have availed himself of his right of entry, or have maintained an action to regain possession. But this he never did during his life, so that there was in fact a disseisin, and an open, notorious and exclusive adverse possession of the estate by Mr. Motte, which created a right and title in his favor, which could not be defeated by Alger or his heirs or devisees.

It has been urged in the argument for the tenants that the payment of taxes, the procurement in his own name of insurance on the house, and the conveyance of a small strip of the land to the city of Boston for the improvement of the sidewalk, by Alger, are sufficient to counteract and defeat the effect of the evidence for the demandant showing a disseisin. But we do not think these acts are inconsistent with the assumption that Alger recognized and allowed the title of Mr. Motte. The payments of the taxes and for insurance were plainly acts of kindness to assist his child, and not at all on his own account. This appears distinctly from his own declarations. As to the land taken by the city for a street, Alger probably, as a

man of business and property, thought that, as his deed to Mr. Motte was not recorded, he could make a good title to the city. But he did not assume to do so without first consulting and obtaining the consent of the demandant and her husband. This, taken all together, tends rather to show that he recognized and admitted their title than that he-designed or intended to, or that he thought he could, set up any in himself.

Upon the whole evidence, and proper inferences to be deduced from it under just and suitable instructions given to the jury on matter of law, it satisfactorily appears to us that a jury would be warranted in finding a verdict for the demandant; and therefore the verdict which was in fact rendered is to stand; and there must be            *Judgment upon it for the demandant.*